# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-6851 FMO (SHx) | Date | **March 27, 2014** |
|---|---|---|---|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|---|---|

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorney Present for Plaintiff(s): | Attorney Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order Re: Pending Motions**

Having reviewed and considered all the briefing filed with respect to (1) defendants' Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. Rule 50 ("JMOL"); (2) defendants' Motion to Amend Judgment Pursuant to F.R.C.P. Rule 59(e) ("Motion to Amend"); (3) plaintiffs' Motion for a New Trial on Damages ("Motion for New Trial"); (4) plaintiffs' Motion for Attorney's Fees and Costs ("Motion for Fees"); and (5) plaintiffs' Application to Tax Costs ("App. for Costs"), (collectively, the "Motions"), the court concludes that oral argument is not necessary to resolve the Motions. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## BACKGROUND

On October 27, 2006, plaintiffs Javier Bravo, Sr. ("Javier Sr."), Hope Bravo ("Hope"), and E.B., a minor, (collectively, "plaintiffs") filed a Complaint against Detective Louis Tanore ("Tanore"), Lieutenant Larry Ralston ("Ralston"), Chief Danny R. Macagni ("Macagni"), and the City of Santa Maria ("Santa Maria" or "the City") (collectively, "defendants" or the "Santa Maria defendants"), as well as the city, county, police chief, sheriff, and sheriff's department of San Luis Obispo; the city, county, police chief, sheriff, and sheriff's department of Santa Barbara; and several other members of the Santa Barbara police department. The Complaint alleged civil rights violations relating to the issuance and execution of a search warrant on plaintiffs' home by a SWAT unit on April 26, 2006. (See, generally, Complaint) (corrected February 1, 2007); (Pretrial Conference Order, filed July 9, 2013, ("PTC Order"), Admitted Facts at ¶ 7). The search was for weapons suspected of being used in an April 21, 2006, shooting incident. (See PTC Order, Admitted Facts at ¶ 8). Following the shooting, Detectives Tanore and Eligio Lara learned from the targets of the shooting that they were former members of the Tangas gang and that they believed they were targeted because they had left the gang. (See id. at ¶ 9).

Tanore prepared an affidavit in support of a warrant, which authorized the search of homes believed to be the residences of seven alleged Tangas gang members, including Javier Bravo, Jr. ("Javier Jr."), the son of Javier Sr. and Hope. (See PTC Order, Admitted Facts at ¶¶ 10 & 12). Tanore's warrant affidavit listed the Bravo residence as Javier Jr.'s address. (See id. at ¶ 14).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

The affidavit contained a summary of Javier Jr.'s rap sheet, including a September 2005 conviction for receiving stolen property, but did not state that Javier Jr. had been sentenced to two years in state prison for the crime.  (See id. at ¶¶ 15-16).

        The warrant was issued on April 25, 2006.  (See PTC Order, Admitted Facts at ¶ 11). Because the Santa Maria Police Department ("SMPD") did not have enough resources to execute all of the warrants at once, it sought the help of the Santa Barbara County Sheriff's Department, ("SBSO"), which in turn requested assistance from the Santa Barbara Police Department ("SBPD").  (See id. at ¶¶ 17-18).  The SBPD SWAT team that served the warrant on the Bravo residence at approximately 5:30 a.m. allowed just a few seconds between announcing their presence and breaking down the door by shooting off the front door locks.  (See id. at ¶ 19). Once the residence was secure, the SBPD turned the scene over to the SMPD to search the premises.  (See id. at ¶ 20).  Hope told officers from the SMPD that her son was in prison and showed them a letter that she had recently received from him, but the officers continued to search the residence and seized a number of items from the home.  (See id. at ¶¶ 22-24).

        Plaintiffs and the City of Santa Barbara defendants filed cross-motions for summary judgment which were granted in part and denied in part on September 3, 2008.[1]  (See Court's Order of September 3, 2008).  After the City of Santa Barbara defendants appealed this ruling, they settled with plaintiffs and were dismissed from the case.  (See Court's Order of May 27, 2009).

        The court granted summary judgment for the Santa Barbara County defendants and the Santa Maria defendants on September 25, 2008, and October 6, 2008, respectively. (See Court's Order of October 6, 2008).  Plaintiffs appealed and on December 9, 2011, the Ninth Circuit affirmed the grant of summary judgment for the Santa Barbara County defendants, but reversed the grant of summary judgment as to the Santa Maria defendants, holding, among other things, that:  (1) Tanore's affidavit in support of the search warrant contained misrepresentations or omissions material to the finding of probable cause; and (2) there was an issue of fact as to whether the misrepresentations or omissions were made intentionally or with reckless disregard for the truth.  See Bravo v. City of Santa Maria, 665 F.3d 1076, 1084-88 (9th Cir. 2011).  The Ninth Circuit remanded the case for further proceedings consistent with its opinion.  See id. at 1091.

        The case was transferred to the undersigned on January 25, 2013, and a jury trial commenced on July 9, 2013.  On July 19, 2013, the jury returned a unanimous verdict.  On plaintiffs' judicial deception claim, the jury found that Tanore acted intentionally or recklessly when he omitted from the affidavit in support of the search warrant the information that in September 2005, Javier Jr. was sentenced to a two-year state prison term.  (See Special Verdict Form at 1).

---

    [1]  On March 22, 2007, the court dismissed the San Luis Obispo defendants pursuant to a stipulation between the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6851 FMO (SHx) | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

The jury also found supervisory liability on the part of Ralston and Macagni, but answered "no" when asked if their conduct was a substantial factor in causing harm to plaintiffs. (See id. at 2-3 & 6). The jury found Santa Maria liable for Macagni's ratification of the deprivation of plaintiffs' rights, and also found that the deprivation of plaintiffs' rights was caused by a longstanding policy, practice, or custom of Santa Maria. (See id. at 3). Finally, the jury found that the deprivation of plaintiffs' rights was caused by Santa Maria's failure to adequately train its officers, but that Santa Maria was not deliberately indifferent to the obvious consequences of its failure to train. (See id. at 3-4). Regarding plaintiffs' unreasonable search claim, the jury found that Tanore unreasonably directed officers from the SMPD to continue the search of plaintiffs' home after they were provided with information that Javier Jr. was incarcerated. (See id. at 5). The jury awarded $5,000.00 to Javier Sr., and $0 to both Hope and E.B., (see id. at 7), which the court later corrected to $1 in nominal damages. (See Judgment After Trial by Jury at 2).

**DISCUSSION**

I.   DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW.

   A.   Legal Standard.

"A [Federal Rule of Civil Procedure] 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009), cert. denied, 131 S.Ct. 68 (2010); see Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law[.]"). "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." Go Daddy, 581 F.3d at 961. "However, Rule 50(b) may be satisfied by an ambiguous or inartfully made motion under Rule 50(a)." Id. (internal quotation marks and citation omitted).

"Judgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict." Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013) (internal quotation marks and citation omitted). "Conversely, if there is such relevant evidence as reasonable minds might accept as adequate to support the jury's conclusion," denial of a motion for judgment as a matter of law is appropriate. See id. (internal quotation marks and citations omitted). In ruling on a Rule 50(b) motion, the court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). "[T]he standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." Id. (internal quotation marks and citations omitted).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|----------|--------------------------|------|--------------------|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

Here, defendants moved for judgment as a matter of law pursuant to Rule 50(a) prior to the jury's verdict, (see Defendants' Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. Rule 50, filed July 12, 2013), preserving their right to file a Rule 50(b) motion.

   B.   Detective Tanore.

   1.   **Judicial Deception**.

   A defendant is liable for judicial deception if he omitted material information from a warrant affidavit either intentionally or with reckless disregard for the truth.  See Bravo, 665 F.3d at 1083. The Ninth Circuit previously determined that the omission from the warrant affidavit of Javier Jr.'s two-year sentence and consequent incarceration at the time of the shooting was a material omission.  See id. at 1086.

   Defendants argue that the evidence at trial was insufficient to establish that Tanore's omission was made intentionally or with reckless disregard for the truth because rap sheets are unreliable with regard to custody status since they do not take into account good time credits, release on parole, etc.  (See JMOL at 14).  However, the jury could reasonably have determined that, because Tanore included Javier Jr.'s conviction for receiving stolen property in the warrant affidavit, Tanore saw the rap sheet's notation (a mere two lines below), that Javier Jr. was sentenced to two years in prison, and that this information should have triggered a deeper investigation into Javier Jr.'s custody status.

   Defendants also argue because Tanore "relied on the information he received from Detective Lara[, he] had no reason to doubt the information he received from Lara, and no reason to suspect that the City's practice for checking custody might have failed."  (JMOL at 14). According to defendants, "although the County computer does not show when a person is in state custody, it does show if the person has been transferred to state custody."  (Id. at 15).  However, the testimony at trial showed that employees of the Santa Barbara County substation could run two different types of searches on their computers to determine custody status.  If asked whether a person was in custody, the employee would run an "ID-60" search, which showed only whether or not the person was in county custody.  (See Trial Transcript ("Trial Tran."), July 11, 2013, p.m. at 32).  If asked a follow-up question, such as whether the employee had any further information about the person, or the last time the person was in county custody, the employee would run an "ID-01" search, which showed past incarcerations and the reasons for release, such as a transfer to state prison.  (See id. at 33).  When an officer calls to ask whether someone is in custody, the county employee assumes that the officer is asking whether the person is in county custody, and runs only an ID-60 search; only if the officer asks for further information does the county employee run an ID-01 search.  (See id. at 56).

   Here, Tanore was the lead detective in charge of securing the warrant, (see Trial Tran., July 10, 2013, p.m. at 79), and knew that it was the practice of the SMPD to call the Santa Barbara County substation to determine whether or not a person was in custody, regardless of

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

whether the person was potentially in local custody or in state custody. (See id. at 51-52). The jury may have concluded that it was reckless for Tanore to rely on Lara to check Javier Jr.'s custody status without explicitly confirming with Lara whether he had asked the county employee for further information, such as whether Javier Jr. had been transferred, or whether Lara had called the state Department of Corrections to confirm Javier Jr.'s custody status. Under the circumstances, such follow-up would have been necessary given the rap sheet's notation that Javier Jr. had been sentenced to two years in prison, which provided notice that Javier Jr. might be in state custody. Indeed, the Ninth Circuit indicated that Tanore's failure to investigate further could give rise to liability. See Bravo, 665 F.3d at 1088 ("Given the importance of the custody status to the finding of probable cause for the search and to the justification for nighttime service, a reasonable jury could conclude that Tanore's failure to mention Javier Jr.'s two-year sentence or to follow up and inquire about Javier Jr.'s custody status amounted to at least reckless disregard for the truth.").

### 2. **Continued Search**.

Defendants assert that Tanore cannot be liable for the continued search of plaintiffs' residence because "[i]f the warrant is facially valid and there is no judicial deception, there can only be liability if the search exceeds the scope of the warrant[,]" (JMOL at 26), and note that the Ninth Circuit has already determined that the four corners of the affidavit were sufficient for probable cause. (See id.). However, the jury determined that there was judicial deception, and the court has found that there was sufficient evidence to support the jury's determination. See supra at § I.B.1.

Defendants are correct that the Ninth Circuit held that the four corners of the affidavit were sufficient to establish probable cause. See Bravo, 665 F.3d at 1084. However, that does not mean that it was reasonable to continue the search after the officers learned that Javier Jr. was in custody; rather they were entitled to continue the search "until presented with convincing evidence that the information they had relied upon was incorrect." Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005) (citations omitted), overruled on other grounds by United States v. King, 687 F.3d 1189, 1189 (9th Cir. 2012), cert. denied, 736 F.3d 805 (2014) (internal quotation marks and citation omitted). Here, Hope told the officers that Javier Jr. was incarcerated and showed them a recent letter from him. (See Trial Tran., July 11, 2013, a.m. at 39-40 & 42-43). At trial, Tanore testified that one of the officers at the scene called him to inform him that Javier Jr. was in custody, but instead of instructing the officer to leave the Bravos' home and end the search, Tanore instructed him to continue and do a "cursory" search of the residence. (See Trial Tran., July 10, 2013, p.m. at 68-69). In short, there was convincing evidence that Javier Jr. was incarcerated, and once Tanore was made aware of that information, he should have stopped the search because there was no probable cause to search once Javier Jr.'s custody status was determined. See Bravo, 665 F.3d at 1084; see also Moore v. Vega, 371 F.3d 110, 118 (2d Cir. 2004) ("As soon as defendants saw a picture proving to them that plaintiff's son and the parolee were not the same person, the officers left. Defendants' reasonable belief that this was the parolee's residence therefore extended until they were presented with convincing evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

the information they had relied upon was incorrect."); Maryland v. Garrison, 480 U.S. 79, 87, 107 S.Ct. 1013, 1018 (1987) ("[A]s the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.").

C.    City of Santa Maria.

Defendants contend that plaintiffs' claims against Santa Maria fail as a matter of law.  (See JMOL at 4).  A municipality cannot be held liable under § 1983 for the acts of its employees under a respondeat superior theory of liability.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 2037-38 (1978); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 415, 117 S.Ct. 1382, 1394 (1997)  ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."). Rather, a plaintiff may recover from a municipal entity if his constitutional injury was inflicted pursuant to a city policy, custom, or practice.  See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (1992); Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007).

1.    **Policy, Custom or Practice**.

To establish a policy, custom or practice, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926 (1988) (internal quotation marks and citation omitted).  A challenged municipal policy "need only cause [the] constitutional violation; it need not be unconstitutional per se." Jackson v. Gates, 975 F.2d 648, 654 (9th Cir.), cert. denied 509 U.S. 905 (1993); see Collins, 503 U.S. at 123, 112 S.Ct. at 1067.  "There also must be a direct causal link between the policy or custom and the injury, and [plaintiffs] must be able to demonstrate that the injury resulted from a permanent and well settled practice."  Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (internal quotation marks and citation omitted); see Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en banc).  "City policy causes an injury where it is the moving force behind the constitutional violation or where the city itself is the wrongdoer." Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir.), cert. denied, 513 U.S. 1148 (1995) (internal quotation marks and citations omitted).

Defendants contend that "[t]he only practice or policy at issue is City officers' practice of calling the Santa Barbara County Jail/substation to check on the custody status of suspects" and that "a practice of checking custody a certain way is not the moving force behind the violation." (JMOL at 5).  They argue that "this City policy in no way directly deprives anyone's rights[,]" (id.), contrasting the practice here with those at issue in Monell, 436 U.S. at 661, 98 S.Ct. at 2020 (policy compelling pregnant employees to take unpaid medical leave), and Gates, 27 F.3d at 1435 (policy of using police dogs to seize fleeing or hiding suspects).  However, the test is not whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

the policy or practice itself necessarily requires the deprivation of constitutional rights, but only whether the policy or practice is the "moving force behind the constitutional violation." Gates, 27 F.3d at 1444.

Here, the practice was for SMPD officers to call the Santa Barbara County substation to check a suspect's custody status, and if the officer was told that the suspect was not in custody, the officer did not then follow up with the state Department of Corrections, even if there were indications that the suspect may be in state custody.  (See Trial Tran., July 10, 2013, p.m., at 51-52) (Tanore) ("Q:  . . .  Did you ask Sergeant Lara to try to determine whether any of these individuals were in custody?  A: Yes.  Q:  And how was – what was your understanding about how he was going to do that?  A:  I assumed that he was going to call the Santa Barbara county substation.  Q:  And why did you assume that?  Was it because it was the usual practice there at Santa Maria?  A:  Yes.  . . .  Q:  So notwithstanding whether a person was in potentially local custody or in state custody, you would call the Santa Barbara County Sheriff's Department to determine whether or not they were in custody? . . .  A:  Yes."); (Id. at 25-27) (Lara) ("Q:  . . .  How did you try to find out whether or not they were in custody?  A:  I called the Santa Barbara county jail substation, which is located in Santa Maria.  Q:  Why did you do that?  A:  Because that is normal practice for us back then, to call them to find out and get the information.  . . .  Q:  Had you ever been trained that if you had information that a person was in custody of the State Department of Corrections, that you should call them directly to verify that?  A:  No, not – not to call them directly, no."); (Trial Tran., July 10, 2013, a.m., at 112) (Ralston) ("Q:  For a person like Javier, Jr., that is one who has an arrest history of being arrested by different Santa Barbara County law enforcement agencies, it was the practice of the Santa Maria Police Department to rely on the county jail to verify whether or not a person was in state custody, is that correct?  . . .  A:  Yes.").

Javier Jr.'s RAP sheet included a conviction for receiving stolen property and a notation that he had been sentenced to two years in prison.  (See Trial Tran., July 10, 2013, p.m., at 60 & 63).  Based on Tanore's experience, this notation meant that Javier Jr. had been sentenced to two years in state prison.  (See id. at 63).  If the SMPD officers had checked with the state Department of Corrections, rather than relying solely on the Santa Barbara County substation, they would almost certainly have learned that Javier Jr. was in state custody.  The court is unpersuaded by defendants' argument that "the practice regarding checking **custody** a certain way has no relationship to the exclusion or inclusion of **sentencing** information" in the warrant affidavit.  (JMOL at 6) (emphasis in original).  As the Ninth Circuit noted, "the appropriate inquiry is not whether Javier Jr.'s two-year sentence dispositively established he was still in custody, but rather whether that fact would have prompted the issuing judge to require additional information or impose specific restrictions on the warrant's execution."  Bravo, 665 F.3d at 1086 (internal quotation marks and citation omitted).  A prison sentence has an obvious relationship to custody status.  If the warrant affidavit had included information about Javier Jr.'s sentence, the issuing judge may well have required the SMPD to confirm with the state Department of Corrections that Javier Jr. was no longer in state custody.  Indeed, Javier Jr.'s custody status was considered "highly material" by the Ninth Circuit because it "meant not only that he would not be present in the Bravo residence at the time of the search, but that he could not have been involved in the

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-6851 FMO (SHx) | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

shooting or in concealing the evidence." Id. at 1085. In short, the SMPD's custody-checking practice was the moving force behind the violation of plaintiffs' constitutional rights. See id. at 1088 ("Given the importance of the custody status to the finding of probable cause for the search and to the justification for nighttime service, a reasonable jury could conclude that Tanore's failure to mention Javier Jr.'s two-year sentence or to follow up and inquire about Javier Jr.'s custody status amounted to at least reckless disregard for the truth.").

      2.    **Ratification**.

      Ratification of the decisions of a subordinate by an official with final decision-making authority can also establish liability under § 1983. See City of St. Louis, 485 U.S. at 127, 108 S.Ct. at 926 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."); Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996), cert. denied, 520 U.S. 1117 (1997) ("We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation."); Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992), cert. denied, 510 U.S. 932 (1993) ("A section 1983 plaintiff may establish municipal liability . . . [by] prov[ing] that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."). "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead, a plaintiff must prove that the policymaker approved of the subordinate's act. For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir.), cert. denied, 528 U.S. 928 (1999) (citations omitted); see Ashby v. Isle of Wight Cnty. Sch. Bd., 354 F.Supp.2d 616, 628 (E.D. Va. 2004) ("The common thread in these cases is that in addition to having knowledge of the subordinate's action, the final policymaker must somehow actively assist the subordinate or participate in administering the action as policy."). There must be "evidence of a conscious, affirmative choice." Gillette, 979 F.2d at 1347.

      Defendants assert that "plaintiffs have not put on evidence that [Macagni] knew of the complained of acts and 'specifically approved' of the acts." (JMOL at 7). There was evidence at trial that Ralston informed Macagni, after the incident, that the officers had failed to determine that Javier Jr. was in custody prior to serving the search warrant. (See Trial Tran., July 10, 2013, a.m. at 63-64) (Ralston) ("Q: . . . After this incident, within four or five weeks, there was occasion to have discussions with the then Chief of Police regarding this incident, that sort of thing; isn't that true? A: Yes. Q: And one of the things the chief was made aware of is that the investigating officers had not determined that Javier, Jr., was, actually, in state custody as of April, 2006? . . . A: Yes that's true.").

      However, defendants are correct that there was no evidence that Macagni "specifically approved" of the unconstitutional acts. Courts have found approval where the policymaker indicated his agreement with the conduct through some affirmative action. See, e.g, Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991) (chief of police ratified officers' constitutional violations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

when he signed a letter stating that none of the plaintiffs' complaints would be sustained); Branscum v. San Ramon Police Dep't., 2012 WL 6697672, *14 (N.D. Cal. 2012) (finding a genuine issue of material fact on the plaintiff's ratification claim where chief of police signed off on the use of force against the plaintiff after reviewing the video and incident report). Here, there was no evidence that Macagni ever expressed his approval of the officers' conduct; the evidence at trial was that, according to Ralston, Macagni did not express disapproval or suggest that the officers be trained to check custody with the state Department of Corrections. (See Trial Tran., July 10, 2013, a.m., 75-76); see also Christie, 176 F.3d at 1239 (citation omitted) (the "mere refusal to overrule a subordinate's completed act does not constitute approval."). Further, plaintiffs did not call Macagni to testify regarding his alleged "specific approval" of the conduct at issue. (See, generally, Trial Tran.). In short, the evidence at trial "permits only one reasonable conclusion," Hagen, 736 F.3d at 1256, which is that Santa Maria is not liable on plaintiffs' ratification theory. However, Santa Maria remains liable to plaintiffs pursuant to its policy, custom, or practice.

D.    Lieutenant Ralston and Chief Macagni.

Section 1983 suits do not support vicarious liability for supervisors because "[e]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct." OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012), cert. denied, 134 S.Ct. 70 (2013) (internal quotation marks and citation omitted). A supervisor can be held liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation[;] or for conduct that showed a reckless or callous indifference to the rights of others." Blankenhorn v. City of Orange, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks and citations omitted) (alteration in original); Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011), cert. denied, 132 S.Ct. 2102 (2012). Individual liability depends on whether the supervisor "'set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'" Blankenhorn, 485 F.3d at 485   (quoting Larez, 946 F.2d at 646). "[T]o state a claim against supervising officers for causing their subordinates' purported violations of the Fourth Amendment, a complaint must allege facts that plausibly suggest that a reasonable supervisor would find it 'clear' that the defendant's conduct was 'unlawful in the situation he confronted.'" Chavez v. United States, 683 F.3d 1102, 1112 (9th Cir. 2012).

Defendants assert that "neither Lieutenant Ralston nor Chief Macagni was aware there was any sort of problem with the custody check procedure" and that "[a]ny alleged constitutional violation had ceased by the time Lieutenant Ralston and Chief Macagni were informed of it." (JMOL at 11). However, prior to service of the warrant, Ralston received briefings from Tanore and Lara regarding their investigation, and also reviewed and made corrections to the warrant affidavit. (See Trial Tran., July 10, 2013, a.m. at 65 & 68). Tanore included Javier Jr.'s 2005 conviction for receiving stolen property in that warrant affidavit, and therefore Ralston should have known that Javier Jr.'s custody status needed to be determined. Ralston knew that the practice

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

at the SMPD was to rely on the county jail to determine whether a person was in state custody, (see id. at 112), a practice the jury determined to be the moving force behind plaintiffs' constitutional injury. See supra at § I.B.1. Indeed, Ralston acknowledges that the SMPD is partly to blame for the incident because "no one bothered to contact the Department of Corrections." (See Trial Tran., July 10, 2013, a.m. at 84-85). Thus, the jury could reasonably have found that Ralston's failure to ensure that Javier Jr.'s custody status was confirmed with the state Department of Corrections amounted to "culpable inaction," see Blankenhorn, 485 F.3d at 485, and that Ralston "should have known" that the search could inflict a constitutional injury upon plaintiffs. See id.

Regarding Macagni, plaintiffs contend that he is individually liable because "[p]er the testimony of defendant Ralston, Macagni was kept abreast of Tanore's investigation that sought and secured the search warrant, then post-incident Macagni was informed of Tanore's failure to ascertain Javier[ ] Jr.'s state prison status. Despite this knowledge and Macagni's admitted role as the SMPD policy maker and chief, Macagni took no remedial steps of any kind whatsoever." (JMOL at 13). In referencing Macagni's post-incident inaction, plaintiffs appear to be arguing that Macagni ratified the unconstitutional conduct, but the court has already determined that plaintiffs did not present sufficient evidence to support this theory. See supra at § I.C.2. Also, while plaintiffs state that "[p]er the testimony of defendant Ralston, Macagni was kept abreast of Tanore's investigation," (JMOL at 13), plaintiffs cite no specific page of the transcript, and the court's review of the record has revealed no testimony to that effect. Indeed, Ralston testified that Macagni did not read the warrant affidavit prior to it being submitted to the judge. (See Trial Tran., July 10, 2013, a.m. at 75); (see also id.) ("Q: But you know, from the chain of command, that [Macagni] approved the execution of the warrant at the Bravo[s'] residence along with the other residences, correct? A: The Chief of Police was advised of our intent to use SWAT teams. That was his only connection to that."). If Macagni, unlike Ralston, did not review the warrant affidavit and see Javier Jr.'s conviction, it cannot be said that he should have known that Javier Jr.'s custody status needed to be confirmed with the state Department of Corrections and that therefore the SMPD's custody-checking practice would cause constitutional injury.

In short, Ralston, but not Macagni, is subject to supervisory liability.

D.    Execution of Warrant.

In its opinion, the Ninth Circuit directed that "[i]f a jury finds that Tanore intentionally or recklessly withheld information about Javier Jr.'s custody status from the issuing magistrate, the district court should apply traditional tort law principles to determine the extent to which the Santa Maria Defendants are liable for any constitutional injuries the Bravos may have suffered as a natural consequence of the judicial deception." Bravo, 665 F.3d at 1089 (internal quotation and citation omitted). "'If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.'" Id. (quoting Restatement (Second) of Torts § 8A comment b (1965)).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

Defendants assert that the SBPD's knock-and-announce violation amounts to a superseding or intervening cause, (see JMOL at 20), which "break[s] the chain of proximate causation." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997). An "unforeseen and abnormal intervention" will break the chain of causality, but a policy is a proximate cause if "intervening actions were within the scope of the original risk and therefore foreseeable[.]" Id. (internal quotation marks and citations omitted).

The jury found that Tanore intentionally or recklessly omitted information regarding Javier Jr.'s two-year sentence from the warrant affidavit and, as discussed above, the court believes that there was sufficient evidence to support that determination. See supra at § I.B.1. The Ninth Circuit discussed the importance of this omission to the justification for nighttime service, noting that "[a] nighttime incursion by a SWAT force is a far more serious occurrence than an ordinary daytime intrusion pursuant to a regular warrant, and therefore requires higher justification beyond mere probable cause to search." Bravo, 665 F.3d at 1085. The warrant application specifically sought authorization for nighttime service, and it should have been foreseeable to Tanore that the omission of information regarding Javier Jr.'s custody status could lead to approval of the request for nighttime service as well as the use of a SWAT team. Tanore ensured that everyone participating in the search had information that the search could potentially be dangerous and was "not surprised" that the SBPD used a SWAT team "because [he] had essentially informed them that they needed to be careful, [and] that these people were possibly violent[.]" (Trial Tran., July 10, 2013, p.m. at 144-45). Regarding the knock-and-announce violation, Tanore also stated that though it was the SBPD's call, he was not surprised that they decided to wait only three seconds between knocking and then shooting off the door locks. (See id. at 148). Thus, the manner in which the SBPD served the warrant was not "an unforeseen or abnormal intervention," and was instead "within the scope of the original risk." Van Ort, 92 F.3d at 837. Finally, the SMPD's practice of relying solely on the Santa Barbara County substation to determine custody status can be said to be the "moving force" behind the violation because the authorization for nighttime service and the use of a SWAT team are the "natural consequences" of a practice that causes the omission from a warrant application of the fact that a potentially violent suspect is currently incarcerated, rather than present at his residence.

E.   Connie Phillips.

Defendants argue that the actions of Connie Phillips ("Phillips"), an employee of the Santa Barbara County substation who ran the custody check for Javier Jr., constitute a superseding cause, and that defendants are therefore not liable for plaintiffs' damages as a matter of law. (See JMOL at 23-24). Defendants note that in 2008, Phillips submitted a declaration under penalty of perjury, stating that she never received a call from Lara inquiring about Javier Jr.'s custody status.[2] (See id. at 24). At trial, however, Phillips testified that she spoke with a male officer who asked whether Javier Jr. was in custody; she told him no, and he did not ask for any

---

[2] Phillips stated that she signed the 2008 declaration without reading it. (See id. at 71-73).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

further information.  (See Trial Tran., July 11, 2013, p.m. at 11 & 17-18).   Defendants suggest that Phillips "tried to do the plaintiffs a favor by not providing all the information she had in response to Lara's inquiry[,]" (JMOL at 24), because she knew of Javier Jr. and had spoken with the Bravo family when he was periodically in custody.  (See Trial Tran., July 11, 2013, p.m. at 9-10 & 26).  However, it was clear from the testimony of both Phillips and Sue Masters, another substation employee, that their computers were unable to access information showing who was currently in state custody, and while Phillips could have told Lara whether Javier Jr. had been transferred to state custody, that was an entirely different computer search run in response to an inquiry for further information, which Lara did not make.  (See Trial Tran., July 11, 2013, p.m. at 10-12, 17-18, 21, 26-27 & 31-33).  Further, the jury could have reasonably believed that Phillips failed to inform Lara that Javier Jr. had been transferred to state custody not because she was attempting to do the Bravo family a favor, but because Lara failed to ask the question that would have led Phillips to run an ID-01 search for that information.  In short, Phillips' conduct was not a superseding cause of plaintiffs' damages as a matter of law.

## II.    DEFENDANTS' MOTION TO AMEND JUDGMENT.

Pursuant to Federal Rule of Civil Procedure 59(e), a party may file a motion to alter or amend a judgment no later than 28 days after the entry of judgment.  "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion."  Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks and citation omitted).  "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."  Id.; see Turner v. Burlington N. Santa Fe R.R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003).  However, "[a] court considering a Rule 59(e) motion is not limited merely to these four situations[.]"  Allstate, 634 F.3d at 1111.

Defendants contend that plaintiffs' damages, costs, and fees should be offset by the settlement payment made by the City of Santa Barbara, which totaled $360,000, and that the Judgment should be amended to incorporate that offset.  (See Motion to Amend at 2).  Of the total settlement amount, $169,856.34 were attorney's fees, (see Declaration of Donald W. Cook Pursuant to the Court's 8/5/13 Order Re: Post-Trial Briefing ("Cook Decl. re: Settlement") at ¶ 2), $16,208.95 were costs, (see Supplemental Declaration of Donald W. Cook ("Supp. Cook Decl. re: Settlement") at ¶ 1), $23,934.71 were liens, (see id.), and each plaintiff received $50,000. (See Cook Decl. re: Settlement at ¶ 2).

### A.    Attorney's Fees.

"[A] non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants."  Corder v. Brown, 25 F.3d 833, 840 (9th Cir. 1994).  Plaintiffs appear

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|----------|--------------------------|------|--------------------|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|-------|----------------------------------------------------------|

to concede that defendants are entitled to an offset for attorney's fees; plaintiffs' only argument on this point is that if the court were to determine that not all the time spent pursuing the Santa Barbara City defendants was also time spent pursuing the Santa Maria defendants, then the offset should be reduced to account for those hours.  (See Motion to Amend at 8) ("SB City was sued only for its entry and search of Plaintiffs' home, whereas as to the Santa Maria defendants, Plaintiffs contended they were liable for SB City's wrongdoing *and more*, i.e., securing the warrant and continuing the search.  Given that, Santa Maria obtains a full dollar credit for fees paid from the SB City Settlement.  Of course, should the Court conclude that not all time spent pursuing claims against SB City was time reasonably attributed to claims against Santa Maria, then the SB City credit must be reduced.") (italics in the original).  Defendants argue that they are entitled to an offset for all the fees regardless of whether all hours were reasonably spent pursuing both the Santa Barbara City defendants and Santa Maria defendants.  (See Defendants' Supplemental Brief Regarding Motion to Amend at 2) ("[P]laintiffs' demanded conditions for the offset are irrelevant.").

In Corder, the court did not expressly consider whether attorney's fees paid by a settling defendant for hours spent pursuing the settling defendant, which were not reasonably spent pursuing the non-settling defendant, should be offset from the attorney's fees award against the non-settling defendant.  See, generally, 25 F.3d at 840.  However, the court's holding was that "a non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants."  Id. (emphasis added).  If the settling defendant paid attorney's fees for hours that were not reasonably attributed to pursuing claims against the non-settling defendant, the fees the settling defendant paid for those hours should not be offset from the total fees ultimately owed by the non-settling defendant because those fees cannot be considered to have been "already paid."  Cf. Jansen v. Equifax Info. Servs., LLC, 2010 WL 3075324, *1-2 (D. Ore. 2010) (When the defendant argued that the plaintiff's attorney's fees should be offset by the fees recovered in settlements with co-defendants, the court distinguished Corder and declined to permit discovery on that issue because the "case d[id] not involve joint conduct by co-defendants causing indivisible harm for which co-defendants would have rights of indemnity or contribution.").

Here, because the court agrees that all hours (other than those excluded by plaintiffs' counsel) plaintiffs' counsel spent on the Santa Barbara City defendants are reasonably attributed to the Santa Maria defendants, see infra at § IV.C.1., the court finds that any attorney's fees due to plaintiffs shall be offset in the amount of $169,856.34.

     B.    Damages and Costs.

Defendants assert that plaintiffs' damages and costs are also subject to a setoff.  (See Motion to Amend at 4-6).  Of the $360,000 the Santa Barbara City defendants paid in settlement, $16,208.95 were used to pay costs, (see Supp. Cook Decl. re: Settlement at ¶ 1), and plaintiffs received $150,000 (the remainder after attorney's fees and liens were subtracted).  (See id. at ¶ 2).

"A nonsettling defendant may claim an offset for amounts paid in settlement by other

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

defendants only if two conditions are met.  First, the nonsettling defendant must demonstrate that the settlement and award (against which the offset is sought) were for the same injury.  Second, the injury must be indivisible such that there is joint and several liability among the settling and nonsettling defendants."  Velez v. Roche, 335 F.Supp.2d 1022, 1042 (N.D. Cal. 2004) (internal citations omitted).  Defendants "ha[ve] the burden of demonstrating [their] entitlement to the offset."  Id.; see Ruhlmann v. Smith, 323 F.Supp.2d 356, 368 (N.D.N.Y. 2004) ("Defendants do not dispute that, as the parties asserting that set-off is appropriate, they bear the burden of proof.").

Defendants assert that "plaintiffs' contention throughout this entire proceeding has been that the plaintiffs suffered on indivisible injury for which the City defendants are liable."  (Motion to Amend at 4).  However, as plaintiffs note, "[t]he jury heard Plaintiffs' damages claims from two separate wrongful acts – the SB City SWAT break-in at night and in violation of knock-notice, and the continued search of Plaintiff[s'] home by Santa Maria officers *after* Tanore was informed that Javier Jr. was incarcerated and had been for many months.  The settling SB City defendants were liable only on the first claim, the SWAT break-in, whereas the jury found Santa Maria defendants liable on *both* claims."  (Id. at 10) (italics in original).  Therefore, any damages awarded against defendants for the continued search were not awarded for the "same injury" for which the Santa Barbara City defendants settled.

While damages awarded against defendants for the SWAT entry may be for the same injury for which the Santa Barbara City defendants settled, defendants cannot obtain a dollar for dollar, or *pro tanto*, reduction of the award; rather, defendants' liability for the damages award would correspond to their proportional share of fault for the violation of plaintiffs' rights.  See Dobson v. Camden, 705 F.2d 759, 766 & 768 (5th Cir. 1983) ("[O]ne of the functions of section 1983, if not the primary function, is therapeutic, seeking to eradicate the disease of violations of federal rights under color of state law.  The one satisfaction rule . . . would tend to eliminate this constitutional medication. . . .  A settlement by one tortfeasor thus should have no effect on the liability of another tortfeasor – each nonsettling tortfeasor will still be responsible for a proportional share of the damages."); Banks ex rel. Banks v. Yokemick, 177 F.Supp.2d 239, 262 (S.D.N.Y. 2001) ("[A] *pro tanto* allocation rule that would allow the most culpable offender to avoid all obligation to share in the damages his official misconduct caused to the injured person serves neither the deterrent aim nor the fairness principles § 1983 incorporates.").

Here, defendants have not carried their burden in demonstrating their entitlement to offset in a particular amount.  They failed to request a verdict form that apportioned fault between themselves and the Santa Barbara City defendants, and that broke down plaintiffs' damages between those attributable to the SWAT entry and those attributable to the continued search.  Citing Hazle v. Crofoot, 727 F.3d 983 (9th Cir. 2013), defendants assert that "asking the jury to apportion fault would have been error as the apportionment issue in civil rights cases is a legal matter for the judge."  (Motion to Amend at 4).  However, Hazle merely stated that "the question of whether an injury is capable of apportionment is a legal one to be decided by the judge, not the jury," 727 F.3d at 995 (emphasis added); Hazle does not state that the judge should actually

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-6851 FMO (SHx) | Date | **March 27, 2014** |
|----------|----------------------|------|---------------------|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|-------|-----------------------------------------------------------|

apportion fault if he or she determines that the injury is capable of apportionment. Because it is not clear how much of plaintiffs' damages are attributable to the continued search, in which the Santa Barbara City defendants were not involved, (see PTC Order, Admitted Facts at ¶ 20) (stating that once the residence was secure, the SBPD turned the scene over to the SMPD to search the premises), defendants have not "demonstrat[ed their] entitlement to the offset." Velez, 335 F.Supp.2d at 1042.

Finally, defendants assert that it is "impermissible double recovery" for plaintiffs to seek recovery of costs from defendants "that were already paid out of the prior settlement proceeds." (Motion to Amend at 6). However, defendants cite no authority for this proposition, relying instead on the "rationale behind *Corder*." (See id.) ("[D]efendants are not aware of any authority directly on point with regard to an offset for costs[.]"). Here, the costs were reimbursed to plaintiffs' counsel's office for out-of-pocket expenses advanced on plaintiffs' behalf for which plaintiffs were responsible. (See Supp. Cook Decl. re: Settlement at ¶ 2). Therefore, the reimbursement had the effect of reducing the amount that each plaintiff received in settlement. The court is persuaded that costs are more analogous to damages than to attorney's fees, and therefore require defendants to pay at least their proportional share. If defendants were allowed to benefit from the payment of costs from the settlement at plaintiffs' expense, the deterrence aim of § 1983 would be undermined. Cf. Dobson, 705 F.2d at 770 ("In order for deterrence to function properly, each tortfeasor must pay for the proportional share of damage caused. Whether this payment results in over, under, or exact compensation is beside the point."). Indeed, plaintiffs may have costs which are attributable only to the Santa Maria defendants, but defendants make no effort to distinguish between the types of costs so that the court might determine defendants' proportional share of the total, (see, generally, Motion to Amend at 6), and therefore have not met their burden.

## III.    PLAINTIFFS' MOTION FOR NEW TRIAL ON DAMAGES.

Plaintiffs move for a new trial on compensatory damages pursuant to Federal Rule of Civil Procedure 59, which states that the court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted[,] . . . the court is bound by those grounds that have been historically recognized[, which] include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks and citations omitted). "A partial new trial is proper only if the issue to be retried is 'so distinct and separable from the others that a trial of it alone may be had without injustice.'" Nelson v. Equifax Info. Servs., LLC, 522 F.Supp.2d 1222, 1237 (C.D. Cal. 2007) (quoting Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515 (1931)). "A partial new trial solely on damages may be ordered so long as it does not involve a tangled or complex fact situation that makes it unfair to determine damages apart from liability." Id.; see Pryer v. C.O. 3 Slavic, 251 F.3d 448, 455 (3d Cir. 2001) ("[A] new trial limited solely to damages is improper

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

where the question of damages . . . is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.  That is, the grant of a partial new trial is appropriate only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.") (internal quotation marks and citations omitted).

     A.    Compensatory Damages.

     Plaintiffs state that "where it is undisputed that a constitutional violation caused an actual injury, an 'award of compensatory damages is mandatory.'" (Motion for New Trial at 3) (quoting Hazle, 727 F.3d at 991-92).  Plaintiffs assert that it is beyond dispute that they suffered mental and emotional distress due to the SWAT entry and subsequent search of their home, and since Hope and E.B. were awarded $0 in damages, they are entitled to a new trial on the issue of damages.  (See id. at 4-5).  Further, plaintiffs assert that even though the jury awarded $5,000 in damages to Javier Sr., it is likely that the award was limited to his physical distress from pre-existing conditions that were aggravated by the incident, so he is also entitled to a new trial on damages.  (See id. at 5).

     In Hazle, the plaintiff refused to participate in a faith-based 12-step program, one of the conditions of his parole, because he objected to its religious content.  See 727 F.3d at 988.  Rather than provide the plaintiff with a secular alternative, the defendants re-arrested him, and the plaintiff was incarcerated for over 100 days.  See id.  The trial court granted summary judgment for the plaintiff on the issue of liability, and held a jury trial on the issue of damages, in which the jury awarded the plaintiff zero damages.  See id. at 990.  The Ninth Circuit reversed the district court's decision not to grant a new trial on damages, finding that an award of compensatory damages for the plaintiff's loss of liberty during his incarceration was mandatory.  See id. at 993.

     The Hazle court distinguished cases in which it had upheld zero-damages verdicts because "the facts of those cases lent themselves to the conclusion that no actual injury had been suffered by the plaintiff."  727 F.3d at 992.  For example, in Guy v. City of San Diego, 608 F.3d 582 (9th Cir. 2010), the jury found that one defendant violated the plaintiff's right to be free from excessive force, and that the defendant's actions caused damage to the plaintiff, but awarded no compensatory or punitive damages.  Id. at 585.  The Ninth Circuit upheld the verdict, noting that "even if it was excessive force for [the defendant] to throw [the plaintiff] to the ground, the jury could have discredited [the plaintiff's] testimony that he was injured by this particular use of force," and that the court could not "properly ignore the possibility that the jury concluded [the defendant] acted excessively in some particular action, and not in others, and that the injury done to [the plaintiff] by [the defendant] was from [the defendant's] actions not amounting to excessive force."  Id. at 588.  Similarly, in Philippine National Oil Co. v. Garrett Corp., 724 F.2d 803 (9th Cir. 1984), the Ninth Circuit upheld a zero-damages verdict because "[t]he jury could have found that [the plaintiff] sustained no damage from any misrepresentations."  Id. at 806.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-6851 FMO (SHx) | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

Like <u>Guy</u> and <u>Philippine National</u>, the jury in this case could have believed that Javier Sr. was the only plaintiff that suffered compensable emotional distress.  Javier Sr. was the only plaintiff present in the living room when the SWAT unit – who he feared were robbers – shot in the door and entered his home.  (<u>See</u> Trial Tran., July 10, 2013, p.m. at 91-94).  When the officers told Javier Sr. that they were looking for his son, he thought that Javier Jr. had gotten out of jail and that the officers had shot Javier Jr. on the doorstep.  (<u>See id.</u> at 96-97).  The jury may also have accounted for differences in the demeanor of each plaintiff; Javier Sr. appeared to be the most emotional of the three plaintiffs, and the jury may have compensated him for the lasting effects of the incident.  Also, while E.B. testified that she experienced headaches and nightmares after the incident, she also testified that Javier Sr. took her to school immediately following the incident.  (<u>See</u> Trial Tran., July 11, 2013, a.m. at 83 & 86).  Thus, the jury here could have simply refused to credit E.B.'s testimony.  <u>See Guy</u>, 608 F.3d at 588 ( "[I]t has long been held that a jury may properly refuse to credit even uncontradicted testimony.").

Even if the court found that the damages awarded by the jury were inadequate, a new trial solely on damages would not be a proper remedy here because the damages issue is not "so distinct and separable from the others that a trial of it alone may be had without injustice."  <u>Gasoline Prods.</u>, 283 U.S. at 500, 51 S.Ct. at 515.  The jury appeared to struggle with the question of liability in this case.  Throughout deliberations, the jury sent several notes to the court regarding recklessness, and on the second-to-last day of deliberations, the jury asked "What happens if the jury is not progressing on the first question of the verdict and does not see any forseeable [sic] agreement?"  (<u>See</u> Jury Note No. 5).  In response, the court gave the jury a modified <u>Allen</u> charge and discharged the jury for the day.  (<u>See</u> Trial Tran., July 18, 2013, at 5-6 & 10-12).  The next day, the jury reached a unanimous verdict finding liability on most claims, but a low amount of damages for Javier Sr. and no damages for Hope or E.B.  (<u>See</u> Special Verdict Form).  It is possible that the jury reached a compromise to come to a unanimous verdict, and under the circumstances, the court is persuaded that defendants would be prejudiced if it were to grant a new trial solely on the issue of damages.[3]  <u>See</u> d'Hedouville v. Pioneer Hotel Co., 552 F.2d 886, 897 (9th Cir. 1977) (applying the principle that "'it is an abuse of discretion to grant [a new trial limited to the issue of damages] if the question of liability is close, if the damages awarded are grossly inadequate, and if there are other circumstances that indicate that the verdict was the result of prejudice or an improper compromise.'") (quoting <u>Hamasaki v. Flotho</u>, 39 Cal.2d 602, 604-05 (1952)).

---

[3]  The court is unpersuaded by defendants' argument that plaintiffs' failure to object to the zero-damages award prior to the jury's discharge waives their right to seek a new trial on damages.  (<u>See</u> Motion for New Trial at 9).  Waiver for failure to object in this context "applies in those circumstances in which the verdict is 'internally inconsistent[.]'"  <u>Hazle</u>, 727 F.3d at 991.  As discussed above, the jury may properly have refused to credit plaintiffs' damages testimony, so it was not necessarily inconsistent for them to find liability but zero damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6851 FMO (SHx) | Date | **March 27, 2014** |
|----------|----------------------|------|--------------------|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|-------|------------------------------------------------------------|

    B.    <u>Superseding Cause</u>.

    Plaintiffs assert that it was prejudicial error to instruct the jury on superseding cause because there was no evidence to support the instruction. (<u>See</u> Motion for New Trial at 10). According to plaintiffs, because "Santa Maria *sought* a nighttime execution of the warrant by a *SWAT* team" and Santa Maria admitted "that nighttime execution meant a *forced* entry[,] . . . as a matter of law Santa Maria cannot claim that Santa Barbara's SWAT forced entry and failure to sufficiently wait for a response to the knocking" was a superseding cause. (<u>See</u> <u>id.</u>) (italics in original).

    Contrary to plaintiffs' assertion that Santa Maria sought execution of the warrant by a SWAT team, the warrant affidavit contains only a request for night service, not the use of a SWAT team. (<u>See</u> Trial Exhibit 4 at SM 0286). Tanore testified that night service does not mean that a SWAT team will be used in all cases. (<u>See</u> Trial Tran., July 10, 2013, p.m. at 144). Additionally, there was testimony that the SBPD was the agency that determined SWAT would be used, and that the SBPD used a "matrix" to make that determination. (<u>See</u> Trial Tran., July 9, 2013, p.m. at 92-93). In short, while there was sufficient evidence for the jury to find that the Santa Barbara City defendants' manner of entry was not a superseding cause, <u>see</u> <u>supra</u> at § I.D., there was also sufficient evidence for the jury to determine that their entry <u>was</u> a superseding cause.

    C.    <u>Justification</u> of <u>Sentencing Information</u>.

    Plaintiffs assert that defendants admitted that Tanore's omission of Javier Jr.'s two-year sentence from the warrant affidavit was intentional, and defendants attempted to justify the omission by claiming that Tanore acted pursuant to the purportedly reliable department practice of calling the Santa Barbara County substation to check custody. (<u>See</u> Motion for New Trial at 14-16). According to plaintiffs, the court's failure to grant their Rule 50 motion permitted defendants to argue that Tanore's actions pursuant to Santa Maria's practice were reasonable, which allowed the jury's sympathy toward defendants to have a prejudicial impact on their award of damages. (<u>See</u> <u>id.</u> at 16). Plaintiffs' assertions are unpersuasive and mischaracterize defendants' argument. As defendants note, they "did not offer evidence or argue that any of the defendants knew that the sentences were on the sheet and intentionally left them off." (Defendants' Supplemental Brief Regarding Motion for New Trial at 5).

    Plaintiffs also appear to take issue with portions of defendants' closing argument. (<u>See</u> Motion for New Trial at 15-16). However, while plaintiffs objected many times during defendants' closing argument, they did not object to the cited portions. (<u>See</u> Defendants' Supplemental Brief Regarding Motion for New Trial at 4; Trial Tran., July 15, 2013, at 121, 129 & 137-38). Courts "review [closing arguments] for plain or fundamental error, absent a contemporaneous objection or motion for a new trial before a jury has rendered its verdict, where the integrity or fundamental fairness of the proceedings in the trial court is called into serious question." <u>Bird</u> v. <u>Glacier Elec. Coop., Inc.</u>, 255 F.3d 1136, 1148 (9th Cir. 2001). Here, even assuming portions of defendants' closing argument were improper as they relate to Tanore following established procedures to

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6851 FMO (SHx) | Date | March 27, 2014 |
|---|---|---|---|
| Title | Javier Bravo Sr., et al. v. City of Santa Maria, et al. | | |

check custody status, any potential prejudice was mitigated by the court's reading of plaintiffs' proposed instruction entitled, "Reliance on Department Policy is Not a Defense," which states as follows: "A police officer may not justify his conduct on grounds that his conduct was in conformity with the policy or practice of his department. The test is whether the conduct was objectively reasonable, not whether the person acted in compliance with department policy or practice." (Jury Instruction No. 25).

## IV.   PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS.

Plaintiffs request that the court award $1,023,610.41 in attorney's fees (a lodestar of $1,193,466.75 less a credit of $169,856.34 for fees already paid by the Santa Barbara City defendants). (See Motion for Fees at 1). Additionally, plaintiffs seek an award of non-statutory costs in the amount of $8,236.28. (See id.).

### A.   Prevailing Party Status.

In the judgment filed on July 31, 2013, Javier Sr. was granted $5,000 in damages from Tanore and Santa Maria and $1 in damages from defendants Ralston and Macagni; Hope was granted $1 in damages from all defendants; and E.B. was granted $1 in damages from all defendants. (See Judgment). Plaintiffs are correct that the judgment "changed the legal relationship between the parties in the favor of Plaintiffs, thereby making them the prevailing parties under 42 U.S.C. § 1983." (Motion for Fees at 2); see Guy, 608 F.3d at 588 ("Despite winning only nominal damages, [the plaintiff] is still a prevailing party in a § 1983 action, and he is therefore eligible for an award of attorney's fees.").

Defendants argue that plaintiffs should not be prevailing parties because the court should grant their Rule 50(b) motion. (See Motion for Fees at 2). As discussed above, see supra, at § I., defendants Rule 50 motion is granted only as to defendant Macagni; therefore, plaintiffs remain prevailing parties as to all other defendants. Defendants also assert that the judgment did not change the legal relationship between the parties because defendants are entitled to an offset of the entire amount of damages awarded to plaintiff, as detailed in defendants' Motion to Amend. (See Motion for Fees at 2). However, this argument is not persuasive because the court has denied defendants' Motion to Amend with respect to the requested offset for damages. See supra at § II.B.

### B.   Entitlement to Attorney's Fees.

Title "42 U.S.C. § 1988(b) authorizes district courts to award the 'prevailing party,' in any suit under 42 U.S.C. § 1983, a 'reasonable attorney's fee.'" Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hunter v. Cnty. of Sacramento, 2013 WL 5597134, *2 (E.D. Cal. 2013) (quoting Hensley

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983)).

Defendants assert that plaintiffs should not recover attorney's fees because "the judgment is clearly a nominal damages judgment as to two of the three plaintiffs," and "[w]hile a § 1983 plaintiff who receives a nominal damage award is a prevailing party for purposes of § 1988, this does not mean that such a plaintiff is necessarily entitled to an award of fees." (Motion for Fees at 6 & 7). "[I]f a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation succeeded, *in addition* to obtaining a judgment for nominal damage." Mahach-Watkins v. Depee, 593 F.3d 1054, 1059 (9th Cir. 2010) (italics in original), cert. denied, 131 S.Ct. 898 (2011) (internal quotations and citation omitted). "There are three factors a district court should consider in determining whether a plaintiff succeeded in some way beyond the judgment for nominal damages. First, the court should consider the difference between the amount recovered and the damages sought, which in most nominal damages cases will disfavor an award of fees. Second, the court should consider the significance of the legal issue on which the plaintiff claims to have prevailed. Third, the court should consider whether the plaintiff accomplished some public goal." Id. (internal quotation marks and citations omitted).

As an initial matter, this is not strictly a nominal damages case because one plaintiff, Javier Sr., recovered damages of $5,000, in addition to the nominal damages recovered by the other two plaintiffs. (See Judgment After Trial by Jury). Therefore, the first factor does not, under the circumstances here, disfavor an award of fees.

Defendants note that plaintiffs did not prevail on their Fourteenth Amendment and California state law claims, (see Motion for Fees at 11), which does weigh against plaintiffs, though "it is well established that failure to recover on *all* theories of liability is not a bar to recovery of attorney's fees." Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1125 (9th Cir. 2008) (emphasis in the original) (internal quotation marks and citation omitted). Plaintiffs also did not prevail against the San Luis Obispo defendants or the Santa Barbara County defendants. (See Motion for Fees at 11). However, the court declines to consider plaintiffs' lack of success against the San Luis Obispo defendants because "San Luis Obispo was named in the lawsuit specifically because of a police report written by *Santa Maria*[,]" but after plaintiffs filed suit, "counsel for San Luis Obispo immediately provided evidence his clients were not involved[, so] Plaintiffs promptly dismissed these defendants, and did not spend any appreciable time pursuing claims against them." (Plaintiffs' Supplemental Memorandum Re: Motion for Fees ("Plaintiffs' Supp. Memo. Re: Fees") at 2). Finally, the fact that the court granted defendants' Rule 50 motion regarding plaintiffs' independent Monell claim and all claims against defendant Macagni also weighs against plaintiffs.

Defendants also contend that "Plaintiffs' recovery was far less than the damages they sought at various points in the litigation and much smaller than the amounts they would have received if they had accepted the $90,000.00 pre-trial Rule 68 offer." (Motion for Fees at 11). Citing A.D. v. Cal. Highway Patrol, 712 F.3d 446, 460-61 (9th Cir. 2013), defendants contend that it is "error for the court to fail to consider settlement negotiations when determining the degree of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

success the plaintiff obtained[.]"  (Motion for Fees at 9; see id. at 11).  Defendants' contentions are unpersuasive.

In A.D., the Ninth Circuit held that "the district court has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as much or as little weight as it sees fit."  712 F.3d at 461 (emphasis added).  Even considering defendants' Rule 68 offer, it would be improper to compare the offer of $90,000 to the total damages of $5003 because the Rule 68 offer was inclusive of attorney's fees, and plaintiffs' pre-offer attorney's fees were $271,445.01 (using hourly rates at one half of the requested rates and after deducting the offset for fees paid by the Santa Barbara City defendants), which exceeds the Rule 68 offer.  (See Plaintiffs' Supp. Memo. Re: Fees at 1; Declaration of Donald W. Cook in Support of Plaintiffs' Supp. Memo. Re: Fees ("Cook Supp. Decl. Re: Fees") at ¶ 3).  Therefore, the court affords defendants' Rule 68 offer little weight in determining the extent of plaintiffs' success.

Finally, plaintiffs' $360,000 settlement with the Santa Barbara City defendants, with $50,000 in damages for each plaintiff, shows that they did obtain some success by bringing this lawsuit.  Defendants argue that plaintiffs' success against the Santa Barbara City defendants should not be considered because "plaintiffs cite no law that a party substantially prevails in litigation against a defendant by recovering damages from a completely separate defendant."  (Motion for Fees at 6).  However, defendants later ask the court to consider the fact that plaintiffs did not prevail on their claims against the San Luis Obispo and Santa Barbara County defendants.  (See id. at 11).  Defendants' argument is unpersuasive, for it would be inconsistent for the court to consider plaintiffs' lack of success against the San Luis Obispo and Santa Barbara County defendants, but to simultaneously refuse to consider plaintiffs' substantial settlement with the Santa Barbara City defendants.  In short, this factor weighs against plaintiffs, but only slightly.

The second and third factors, however, weigh in favor of plaintiffs.  In convincing the jury that the search of their home was conducted pursuant to an invalid warrant procured by judicial deception, that the search should not have continued after Tanore became aware of Javier Jr.'s incarceration, and that it was unreasonable for Santa Maria to have a practice of checking custody by contacting only the Santa Barbara substation even when officers had reason to believe that a person may be in state custody, plaintiffs prevailed on significant legal issues.  See Richard v. City of Harahan, 6 F.Supp.2d 565, 576 (E.D. La. 1998) (granting attorney's fees where the plaintiff "prevailed on a significant substantive issue – the Fourth Amendment right to be free from unreasonable searches and seizures").  In particular, the jury's findings regarding Santa Maria's custody-checking practice serves the public goal of ensuring that officers utilize the most effective means of checking custody, which should reduce the likelihood that other innocent individuals would be unnecessarily subjected to a search of their homes by a SWAT team.  Additionally, plaintiffs' suit led to the Ninth Circuit's clarification that a nighttime SWAT search requires a higher level of justification than mere probable cause, see Bravo, 665 F.3d at 1085, an outcome that may impact search warrants throughout the circuit.

Defendants argue that the Ninth Circuit's holding with respect to nighttime SWAT searches

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|----------|--------------------------|------|--------------------|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|-------|--------------------------------------------------------------|

is not new law, but do not cite any previous cases for this proposition. (See, generally, Motion for Fees at 7). While the Ninth Circuit supported its determination with reference to other cases, those cases do not clearly state that rule. See Bravo, 665 F.3d at 1085-86. Defendants also assert that "all the testimony at trial was that Tanore and the City officers still check custody the same way they did during the subject events, so plaintiffs have not effected any change in policy or practice." (Motion for Fees at 6-7). However, Santa Maria's failure to make changes to its deficient custody-checking practice does not mean that plaintiffs have accomplished no public goal. See Mahach-Watkins, 593 F.3d at 1062-63 ("It is possible that the CHP will continue, as it has said it will, to follow its current 'policies and practices' concerning the use of force despite the jury conclusion that Officer Depee acted unconstitutionally. However, this does not mean that Mahach-Watkins' § 1983 suit, and the jury's verdict that Depee used excessive force, accomplished no public goal. . . . The CHP's stated choice to ignore that deterrent does not minimize the importance of this case to others."); Guy, 608 F.3d at 590 ("It might be argued that the district court's decision [denying attorney's fees] was logical and plausible because there is no evidence that the SDPD changed its investigation procedures or modified its use-of-force policies because of this case and therefore Guy did not produce a tangible result. . . . [However, t]he jury's verdict that some of Maley's force was excessive offers clear and important guidance to the police department, which is a sufficiently tangible result.").

In short, the court is persuaded that plaintiffs' litigation was successful and that an award of attorney's fees is justified.

C.   Computation of the Lodestar.

"To determine the amount of a reasonable fee under § 1988, district courts typically proceed in two steps. First, courts generally apply . . . the lodestar method to determine what constitutes a reasonable attorney's fee. Second, the district court may then adjust the lodestar upward or downward based on a variety of factors." Gonzalez, 729 F.3d at 1202 (internal quotation marks and citations omitted). "Under the lodestar method, the district court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Id.

"[T]here is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel Winn, 559 U.S. 542, 554, 130 S.Ct. 1662, 1673 (2010); Gonzalez, 729 F.3d at 1209 ("After computing the lodestar figure, district courts may adjust that figure pursuant to a variety of factors.") (internal quotation marks and citation omitted). These factors include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

"undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Gonzalez, 729 F.3d at 1209 n. 11 (internal quotation and citation omitted).

      1.    **Reasonable Hours**.

      "A district court, using the lodestar method to determine the amount of attorney's fees to award, must determine a reasonable number of hours for which the prevailing party should be compensated. Ultimately, a 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." Gonzalez, 729 F.3d at 1202 (internal quotation marks and citations omitted). According to plaintiffs' counsel, they spent a total of 2,409.62 hours litigating this case. (See Motion for Fees at 12). They then deduct 88.30 hours, which were hours expended in pursuing claims against the Santa Barbara County defendants that were not also reasonably expended against the Santa Maria defendants, for an adjusted total of 2,321.32 hours. (See id.).

      Defendants make several arguments as to why the plaintiffs' lodestar is unreasonable. First, defendants assert, relying on Marek v. Chesney, 473 U.S. 1, 105 S.Ct. 3012 (1985), that plaintiffs are not entitled to recover any attorney's fees or costs incurred after March 18, 2013, the date of defendants' Rule 68 offer for $90,000, because plaintiffs did far worse than the Rule 68 offer. (See Motion for Fees at 15); see also Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). Defendants' argument and reliance on Marek is unpersuasive. In Marek, the plaintiffs won $60,000 in damages and had $32,000 in pre-offer costs (which included attorney's fees), and the Supreme Court noted that the continuation of the case after the Rule 68 offer resulted in a recovery $8,000 less than the defendants' offer. See 473 U.S. at 7, 11, 105 S.Ct. at 3015, 3017. Under Marek, pre-offer costs and fees must be taken into account when determining whether plaintiffs ultimately recovered less than the Rule 68 offer. Here, even using hourly rates that are half of those requested, plaintiffs calculate that their pre-offer fees were $271,445.01 (after deducting the offset for fees paid by the Santa Barbara City defendants), which exceeds the Rule 68 offer. (See Plaintiffs' Supp. Memo. Re: Fees at 1; Cook Supp. Decl. Re: Fees at ¶ 3). Accordingly, plaintiffs are entitled to fees and costs incurred after defendants' Rule 68 offer.

      Second, defendants contend that plaintiffs' lodestar should be reduced because plaintiffs did not succeed on their Fourteenth Amendment and California state law claims (collectively, "subject claims"). (See Motion for Fees at 15-16). In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983), the Supreme Court explained that "no fee may be awarded for services on [an] unsuccessful claim" that is "based on different facts and legal theories" from a successful claim. 461 U.S. at 435, 103 S.Ct. at 1940. However, the Court also recognized that "[i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." Id. As the Hensley Court stated:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6851 FMO (SHx) | Date | March 27, 2014 |
|---|---|---|---|

| Title | Javier Bravo Sr., et al. v. City of Santa Maria, et al. |
|---|---|

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]

Id.

As an initial matter, defendants do not point to any specific entries in plaintiffs' hours relating to the subject claims that defendants claim should not be compensated. (See, generally, Motion for Fees); cf. Scarfo v. Cabletron Sys. Inc., 54 F.3d 931, 965-66 (1st Cir. 1995) (failure to challenge assertion of plaintiff's counsel that hours worked on unsuccessful claims were excluded from fee request waived issue on appeal). In any event, defendants' blanket assertion that all hours spent on the Fourteenth Amendment and state law claims is too generalized and conclusory to justify a drastic reduction in the lodestar, especially where, as here, all of plaintiffs' claims involved a common core of facts and related legal theories, such that the same factual discovery was required to prove each of plaintiffs' claims. (See, generally, Complaint); see Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. Further, a review of the record, including the summary judgment orders, indicates that the time spent on unsuccessful claims was likely minimal.

Nevertheless, in order to take into account plaintiffs' limited success on some of their claims and against some defendants, the court will reduce plaintiffs' lodestar. As the Supreme Court has stated:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

Hensley, 461 U.S. at 436-37, 103 S.Ct. at 1941.

Here, although only one of the plaintiffs obtained a damages amount for $5000, plaintiffs obtained a verdict that the City of Santa Maria's practice relating to checking custody status was the moving force in causing a violation of their constitutional rights. Arguably, the jury's finding regarding Santa Maria's practice constitutes an excellent result, thereby entitling plaintiffs to a fully compensatory fee. See Hensley, 461 U.S. at 435, 103 S.Ct. at 1940 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). Further, given that this is a contingency case, (see Declaration of Robert Mann in Support of Motion for Fees ("Mann Decl.") at ¶ 18), and that at least prior to the appeal, plaintiffs' counsel spent fewer hours prosecuting the case than defense counsel did defending it, (see Motion for Fees at 14), the court is persuaded that a modest reduction in the lodestar is sufficient. See Moreno v. City of

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

<u>Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008); <u>Burgess</u> v. <u>Premier</u> <u>Corp.</u>, 727 F.2d 826, 840 (9th Cir. 1984) (comparing plaintiffs' counsel's hours to defendants' counsel's hours in upholding award of attorney's fees and noting that plaintiffs "did not have the laboring oar on burdens of proof and presentation"). In short, the court concludes that a 10 percent reduction is sufficient to account for plaintiffs' limited success. <u>See</u> <u>Moreno</u>, 534 F.3d at 1114 ("[T]he district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation."); <u>Merriweather</u> v. <u>Family</u> <u>Dollar</u> <u>Stores, Inc.</u>, 103 F.3d 576, 582-84 (7th Cir. 1996) (affirming 10 percent reduction to account for fact that claim of race discrimination was lost). Taking into account the ten percent deduction, plaintiffs' lodestar shall be reduced to 2,098.13 hours (Robert Mann: 575.52; Donald W. Cook: 284.08; Cynthia Anderson-Barker: 343.50; Samantha Koerner: 422.10; Jorge Gonzalez: 159.30; Dinorah Pinelo: 282.40; Patricia Orantes-Gallegos: 9.54; Carol Tokeshi: 12.69). (<u>See</u> Motion for Fees at 13; Declaration of Donald W. Cook in Support of Motion for Fees ("Cook Decl. Re: Fees") at Exh. Q).

Third, defendants challenge plaintiffs' claim for time spent against the Santa Barbara City defendants as well as plaintiffs' reduction of 4.1% for the hours plaintiffs' counsel incurred in dealing with issues against the Santa Barbara County defendants. (<u>See</u> Motion for Fees at 16). Defendants also assert that "the time spent on the appeal should be reduced by one half," (<u>id.</u> at 17), presumably because there were two defendant groups involved in the appeal (the Santa Barbara County defendants and Santa Maria defendants). Defendants' assertions are unpersuasive.

Plaintiffs' theory was that the individual officers and the various municipalities (including the City of Santa Maria) were all involved and responsible for securing and executing the search warrant and that the City of Santa Maria was responsible for the continuation of the search after learning that there was no longer probable cause to support the warrant. (<u>See</u> Complaint at ¶¶ 8-30). According to plaintiffs, Santa Maria is responsible for all violations of plaintiffs' rights by the Santa Barbara City defendants because if Santa Maria had not sought to execute a nighttime search warrant and prepared a warrant affidavit that omitted material facts, the search would never have occurred. (<u>See</u> Mann Decl. at ¶ 32). Similarly, had the Santa Barbara City defendants not been named in the suit, it would still have been necessary for plaintiffs to conduct discovery into Santa Barbara City's actions in order to establish Santa Maria's responsibility for the incident. (<u>See</u> <u>id.</u> at ¶ 33). With respect to Santa Barbara County, plaintiffs' counsel notes that the time spent deposing Santa Barbara County employees and reviewing County records was not deducted since "Plaintiffs contended Santa Maria was responsible for the entry and search by the Santa Barbara City SWAT unit[,]" and because Santa Barbara County was the agency that brought in Santa Barbara City, it was essential to know what the County obtained from Santa Maria and provided to Santa Barbara City.[4] (<u>See</u> <u>id.</u> at ¶ 31). Under these circumstances, the

---

[4] It should be noted that plaintiffs do not assert that none of the other hours they expended were related to their claims against the Santa Barbara County defendants; rather, there were hours expended that reasonably related to both the Santa Barbara County and Santa Maria

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

hours spent pursuing the no-liability defendants cannot be segregated from the time spent on the successful claims against the City of Santa Maria, Tanore and Ralston.  See, e.g., City of Riverside v. Rivera, 477 U.S. 561, 580-81, 106 S.Ct. 2686, 2697 (1986) (although plaintiffs named city and 31 individual officers as defendants, and ultimately prevailed only as to city and five officers, attorney's fees properly awarded for all time claimed, and exoneration of other officers did not require reduction due to factual relation of claims); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 761-63 (2nd Cir. 1998) (reversing district court denial of attorney's fees where plaintiffs obtained injunction against a municipality but lost all claims against individual defendants, court noted that individual defendants were alleged participants in a conspiracy, with the municipality, so that the hours expended in pursuing those defendants could not be segregated from the time spent on the unsuccessful claims against the municipality).  In any event, the court agrees with plaintiffs that defendants' "rigid pro-rata deduction" is improper under the circumstances of this case.  (See Motion for Fees at 2); Cunningham v. Cnty. of L.A., 879 F.2d 481, 485 (9th Cir. 1988), cert. denied, 493 U.S. 1035 (1990) ("We agree with [the plaintiff]'s legal premise that court's may not adopt rigid mathematical formulas tying the lodestar figure to the ratio of defendants remaining at trial to defendants served in the complaint.").

Finally, defendants assert that "[a] significant reduction is appropriate" because there was a lot of duplication in that plaintiffs "utilized counsel from three separate law firms to deal with the claims of three plaintiffs arising out of a single incident."  (Motion for Fees at 18).  According to defendants, "[a] cursory review of the billings reveals duplication of efforts on multiple issues and inherent ambiguities such that it is impossible to precisely point out what was done and by who." (Id.).  However, defendants' assertions are conclusory and insufficient to carry their burden of rebuttal; defendants do not specifically identify any particular time entries representing duplication of effort.  (See, generally, id.).  Defendants have not provided any specific basis or challenge to plaintiffs' counsel's hours and, therefore, no further reduction is appropriate. See Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994) (fee opponents failed to meet burden of rebuttal, because opponents failed to point out with specificity any charges that were excessive or duplicative); Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 106 F.3d 284, 296-97 (9th Cir. 1997), rev'd on other grounds, 523 U.S. 340 (1998) (rejecting argument that certain hours should have been excluded, because no specific objection was raised in district court); see also Smith v. Rogers Galvanizing, 148 F.3d 1196, 1199 (10th Cir. 1998) (district court did not abuse discretion in refusing to reduce hours as to which fee opponent made no specific objection); Sheets v. Salt Lake City, 45 F.3d 1383, 1391 (10th Cir. 1995) (fee opponent who argued merely that fee request was exorbitant and duplicative failed to carry burden of opposing fee, and waived issue for purposes of appeal).

---

defendants.  (See Mann Decl. at ¶ 26).  Further, plaintiffs' counsel deducted "County-only" time from the appeal, and it appears from the appellate briefs and the Ninth Circuit opinion dealing with the Santa Barbara County defendants that "County-only" time was a small fraction of the appeal. (See id. at ¶ 27).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|----------|---------------------------|------|---------------------|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|-------|-----------------------------------------------------------------|

In short, the court is persuaded, under the circumstances of this case, that a 10 percent in the lodestar is appropriate.  As Ninth Circuit Chief Judge Kozinski stated in an attorney's fees decision relating to a § 1983 case:

> It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fees cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.  It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.  By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

Moreno, 534 F.3d at 1112.

      2.    **Reasonable Rate**.

"In addition to computing a reasonable number of hours, the district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount.  The prevailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount."  Gonzalez, 729 F.3d at 1205 (internal quotation marks and citations omitted).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits[.]"  Id. (internal quotation marks and citation omitted).  "Within this geographic community, the district court should take into consideration the experience, skill, and reputation of the attorney or paralegal."  Id. at 1205-06 (internal quotation marks and citations omitted).  "[T]he fee applicant has the burden of producing satisfactory evidence that the rates he requests meet these standards."  Id. at 1206 (internal quotation marks and citation omitted).

Plaintiffs request that the court approve the following hourly rates: $710 for Robert Mann, $675 for Jorge Gonzalez, $650 for Donald Cook, $550 for Cynthia Anderson-Barker and Samantha Koerner, and $235 for the three paralegals, Dinorah Pinelo, Patricia Orantes-Gallegos, and Carol Tokeshi.  (See Motion for Fees at 19).  In support of their requested hourly rates, plaintiffs submitted declarations setting forth their relevant experience and qualifications.  (See Mann Decl. at ¶¶ 3-16 & 35-56; Cook Decl. Re: Fees at ¶¶ 2-4; Declaration of Samantha Koerner in Support of Motion for Fees at ¶¶ 2-7; Declaration of Cynthia Anderson-Barker in Support of Motion for Fees at ¶¶ 2-6; Declaration of Jorge Gonzalez in Support of Motion for Fees at ¶¶ 2-6).  These declarations establish that they are experienced and well-respected attorneys and support staff.  (See, generally, Motion for Fees).

In addition, plaintiffs' counsel support their hourly rates with the Declaration of Barrett S. Litt in Support of Motion for Fees ("Litt Decl."), a recognized expert in attorney's fees in civil rights and class action cases.  (See Litt Decl. at ¶¶ 7-9).  Mr. Litt provides tables for each plaintiffs'

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|----------|--------------------------|------|--------------------|

| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** |
|-------|-------------------------------------------------------------|

attorney and one table for the paralegals, which compare the requested hourly rates to the prevailing rates in the community for attorneys and paralegals with similar years of experience. (See id. at ¶¶ 18-27). According to those charts, the hourly rates requested by plaintiffs counsel are clearly within a reasonable range.

Defendants object to the Litt Decl. because in Gonzalez, the Ninth Circuit "affirmed the decision in the trial court to reject the declaration of Mr. Litt as evidence of the fees that should be awarded." (Defendants' Supplemental Brief Regarding Motion for Fees ("Defendants' Supp. Memo. Re: Fees") at 3); see Gonzalez, 729 F.3d at 1208 (noting that district court properly rejected Litt's declaration because it relied on confidential sources and only listed rates by firm, not by attorney or practice area). In this case, however, "Mr. Litt does not rely on confidential sources (as he did in Gonzalez)." (Plaintiffs' Supp. Memo. Re: Fees at 4; Litt Decl. at ¶¶ 15-17). While in Gonzalez, Mr. Litt provided a chart with only two columns, one for the firm name and one for the rate, see 729 F.3d at 1208, in this case Mr. Litt's charts include the firm name, the number of years of experience and year of graduation for the comparison attorney, the hourly rate, and the year that rate was awarded. (See Litt Decl. at ¶¶ 18-19, 23-24 & 27). Further, other courts have accepted Mr. Litt's opinion regarding reasonable hourly rates. See Rauda v. City of L.A., Case No. CV 08-3128 CAS (PJWx), Order Re: Plaintiffs' Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988, filed December 20, 2010, at 10 (The court "concludes, and is satisfied based on the declarations of Barrett S. Litt and Carol A. Sobel in support of plaintiffs' motion that the hourly rates requested by plaintiffs are consistent with those in the relevant legal community for individuals having the stature of plaintiffs' counsel."); Lauderdale v. City of Long Beach, Case No. CV 08-0979 ABC (PJWx), Order Re: Attorney Fees and Costs, filed January 11, 2010, at 11 ("Barrett S. Litt, another experienced civil rights litigator, also testified that the rates are in line with the Southern California market, his own experience, and fee awards in similar cases.").

Defendants contend, relying on the Corder case, that "it is an abuse of discretion for the court to award all fees requested based on counsel's alleged current rates[,]" and that therefore "[t]he court should discount the fee award based on the failure to provide evidence of historical rates." (Motion for Fees at 24). Defendants' reliance on Corder is unpersuasive.

In Corder, the trial court determined the lodestar figure for the attorney's fees award, but reduced it by 20 percent. See 25 F.3d at 835. The Ninth Circuit determined that the 20 percent reduction was made on an improper basis, and remanded the case. See id. Rather than reinstating the original lodestar figure and awarding interest on that amount, the district court recalculated the entire award based on plaintiffs' counsel's current hourly rate to compensate for the delay in payment caused by the appeal. See id. at 836. The defendant appealed again, and the Ninth Circuit held that it was an abuse of discretion to recalculate the entire award rather than simply award interest, because the attorney's fees award was a judgment on which the judgment-holder is entitled to interest. See id. at 838-39. However, the Ninth Circuit contrasted the situation in which attorney's fees are awarded and there is a delay in collection due to an appeal of the fees award with the situation in which the litigation itself spans several years. See id. at 838. The

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

latter situation, which is what the court encounters in this case, is governed by Missouri v. Jenkins ex rel Agyei, 491 U.S. 274, 109 S.Ct. 2463 (1989). See Corder, 25 F.3d at 838. In Jenkins, the Supreme Court held the following:

> Clearly, compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise – is within the contemplation of [§ 1988].

491 U.S. at 283-84, 109 S.Ct. at 2469 (emphasis added). Therefore, it is appropriate to calculate the lodestar figure based on plaintiffs' counsel's current hourly rates.[5]

Based on plaintiffs' counsel's declarations, the Litt Decl., and the court's own experience with reasonable rates in civil rights cases, see Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (agreeing with other circuit courts that "it is proper for the court to rely [in part] on its familiarity with the legal market" in determining a reasonable rate), the court finds that the hourly rates requested by plaintiffs' counsel are reasonable.

"Under the lodestar method, the district court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Gonzalez, 729 F.3d at 1202 (internal quotation marks and citations omitted). Therefore, the lodestar figure – after taking into account the 10 percent reduction set forth above – is $1,193,466.75, calculated as follows:

| Legal Worker | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Robert Mann (attorney) | 575.52 | $710.00 | $408,619.20 |
| Donald W. Cook (attorney) | 284.08 | $650.00 | $184,652.00 |
| Cynthia Anderson-Barker (attorney) | 343.50 | $550.00 | $188,925.00 |
| Samantha Koerner (attorney) | 422.10 | $550.00 | $232,155.00 |
| Jorge Gonzalez (attorney) | 159.30 | $675.00 | $107,527.50 |

---

[5] Defendants also argue that the court should decline to award plaintiffs' counsel higher hourly rates than those awarded by the district court in Camarillo v. City of Maywood, 2011 WL 3665028 (C.D. Cal. 2011). (See Motion for Fees at 24). However, following submission of the Motion for Fees, the Ninth Circuit reversed Camarillo in the Gonzalez decision and found that the district court's rate determination was arbitrary. See Gonzalez, 729 F.3d at 1206-07.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-6851 FMO (SHx) | Date | March 27, 2014 |
|---|---|---|---|
| Title | Javier Bravo Sr., et al. v. City of Santa Maria, et al. | | |

| | | | |
|---|---|---|---|
| Dinorah Pinelo (paralegal) | 282.40 | $235.00 | $66,364.00 |
| Patricia Orantes-Gallegos (paralegal) | 9.54 | $235.00 | $2,241.90 |
| Carol Tokeshi (paralegal) | 12.69 | $235.00 | $2,982.15 |
| **Totals** | **2,089.13** | | **$1,193,466.75** |

Since the court determined that an offset of $169,856.34 is appropriate, see supra at § II.A., plaintiffs shall recover a total of $1,023,610.41 in attorney's fees.

      D.     Non-Statutory Costs.

Plaintiffs request $8,236.28 in non-statutory costs, covering items such as messenger fees, copying charges, parking charges, postage, and travel and lodging charges not ordinarily recoverable in the statutory bill of costs. (See Motion for Fees at 24). However, defendants argue that plaintiffs waived this issue by failing to raise it at the court-ordered meet and confer. (See id. at 25). Given that plaintiffs failed to respond to defendants' argument, (see, generally, Plaintiffs' Supp. Memo. Re: Fees), the court finds that plaintiffs have waived this issue and are not entitled to statutory costs.

## V.    PLAINTIFFS' APPLICATION TO TAX COSTS.

Pursuant to Local Rule 54-3, plaintiffs filed their App. for Costs, requesting that the Clerk of the Court tax costs against defendants in the amount of $15,246.76. (See App. for Costs at 1; Proposed Bill of Costs). Defendants argue that the court should exercise its discretion to deny costs because "[f]or all intents and purposes, the judgment amounts to a good result for the defendants and fundamental fairness dictates that plaintiffs be denied costs." (Objection to App. for Costs ("Opp. to App. for Costs") at 2). The court rejects this argument for the same reasons that it determined an award of attorney's fees was appropriate. See supra at § IV.B.

Defendants also argue that plaintiffs should not be awarded costs because they were already compensated for their costs by the settlement with the Santa Barbara City defendants. However, this is merely a rehash of defendants' argument that plaintiffs' costs should be offset, which the court has already rejected. See supra at § II.B.

Finally, defendants object to several specific items claimed as costs. First, defendants assert that the cost for Dr. Rosenberg's deposition testimony was duplicated on the App. for Costs, and therefore, plaintiffs' claimed cost of $8,895.00 for depositions should be reduced by $750.00 to $8,145.00. (See Opp. to App. for Costs at 3). Second, defendants assert that plaintiffs' claimed cost of $372.16 for trial exhibits should be removed because the rule on which this request is based "only allows for costs of copies of documents admitted into evidence when the original is not available or the copy is substituted for the original at the request of an opposing

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 06-6851 FMO (SHx)** | Date | **March 27, 2014** |
|---|---|---|---|
| Title | **Javier Bravo Sr., et al. v. City of Santa Maria, et al.** | | |

party[,]" and "Plaintiffs have not provided any detail to show that the document copy charges are for materials that were admitted into evidence at trial." (Id.); see Local Rule 54-3.12. Finally, defendants state that "Plaintiffs are also claiming two sets of summary judgment filings from February 2008 and March 2008 in the amount of $747.75[,]" and they object because plaintiffs have not provided supporting documents evidencing the costs claimed or evidence that the motions were documents necessarily filed and served. (See Opp. to App. for Costs at 3). Plaintiffs fail to respond to any of these arguments. (See, generally, Reply to Opp. to App. for Costs). Therefore, the court will deduct $1,869.91 ($750.00 + $372.16 + $747.75) from plaintiffs' request of $15,246.76, for a total of $13,376.85 in statutory costs.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Defendants' Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. Rule 50 **(Document No. 376)** is **granted in part and denied in part**.

2.  Defendants' Motion to Amend Judgment Pursuant to F.R.C.P. Rule 59(e) **(Document No. 377)** is **granted in part and denied in part**.

3.  Plaintiffs' Motion for a New Trial on Damages **(Document No. 378)** is **denied**.

4.  Plaintiffs' Motion for Attorney's Fees and Costs **(Document No. 379)** is **granted in part and denied in part**. Plaintiffs shall recover $1,023,610.41 in attorney's fees and $0.00 in non-statutory costs from defendants Tanore, Ralston, and the City of Santa Maria.

5.  Plaintiffs' Application to Tax Costs **(Document No. 361)** is **granted in part and denied in part**. Plaintiffs shall recover statutory costs of $13,376.85 from defendants Tanore, Ralston, and the City of Santa Maria.

6.  An amended judgment shall be entered in accordance with the rulings set forth in this order.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |